# BARDON *v.* LAND AND RIVER IMPROVEMENT COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 138. Argued January 18, 1895. — Decided March 28, 1895.

Although section 3186 of the Revised Statutes of Wisconsin may have enlarged the ordinary equitable action to quiet title and remove a cloud, the Circuit Court of the United States, sitting in that District, may take jurisdiction of a bill properly brought under its provisions.

A person in possession, claiming under a tax deed, under which he had obtained title, may institute such a suit.

The jurisdiction of a suit so instituted is not affected by the provision in section 1197 of the Revised Statutes of Wisconsin of 1878 conferring for three years a right of action by the grantee in a tax deed against the owner to bar him and his grantees from claiming the land, nor by the provisions of § 22, c. 138, of the Revised Statutes of 1858.

Questions affecting the validity of a tax deed of real estate in a State must be disposed of in accordance with the interpretation of the statutes of the State by its highest judicial tribunal.

In Wisconsin when a tax deed is in due form and recorded in the proper office, and the lands described therein remain vacant and unoccupied for three years or more after the recording thereof, the tax title claimant is deemed to be in constructive possession, the statute of limitations runs in his favor, and the original owner is barred from attacking the validity of the tax deed.

The introduction of certain evidence by the appellee held not to be a waiver of its right to rely on the statute of limitations.

In considering the acts and proceedings of county boards acting under Rev. Stats. Wis. of 1858, c. 13, § 28, they must be liberally construed.

The Revised Statutes of Wisconsin of 1858 provided that the register of deeds should keep a general index, each page of which should be divided into eight columns, with heads to the respective columns, as follows: "Time of reception. Name of grantor. Name of grantee. Description of land. Name of instrument. Volume and page where recorded. To whom delivered. Fees received;" that such register should make correct entries in said index of every instrument or writing received by him for record, under the respective and appropriate heads, entering the names of the grantors in alphabetical order; and should immediately, upon the receipt of any such instrument or writing for record, enter in the appropriate column and in the order in which it was received the day, hour, and minute of its reception, and the same should be considered as recorded

at the time so noted. By section 759 of the Revised Statutes of 1878 it is directed that the division shall be into nine columns, the first column being headed: "Number of instrument," and the others as in the act of 1858. In this case the tax deed was entered in the index under the name of Douglas County by which it was issued, although running in the name of the State as well as of the county. The original index had the eight divisions required by the statute, but the fourth column, under the heading "Description" was subdivided as shown in the opinion. This index becoming dilapidated was laid aside, and a new one was prepared under the provisions of the laws of 1860, c. 201, which complied with the provisions of the statute in that respect, and was substituted for the original. *Held*,

(1) That it was not necessary to insert in the index the name of the State as a grantor;

(2) That taking the page of the original index as a whole, no one could be misled by it who was not wilfully misled, and it was sufficient to set the statute of limitations in operation;

(3) That the new and correct index, having been properly certified to according to law, was from that date as effective as the original;

(4) That the appellant could not question the complainant's title on the ground of informality in the original.

THIS was a bill in equity, filed under section 3186 of the Revised Statutes of the State of Wisconsin, by the Land and River Improvement Company, a corporation of New Jersey, against Thomas Bardon, a citizen of the State of Wisconsin, in the Circuit Court of the United States for the Western District of Wisconsin, to have certain conveyances declared void and to quiet the title to the southeast quarter of section 28, township 49 N., range 14 W., in Douglas County, Wisconsin.

The section in question is as follows:

"SEC. 3186. Any person having the possession and legal title to land may institute an action against any other person setting up a claim thereto, and if the plaintiff shall be able to substantiate his title to such land, the defendant shall be adjudged to release to the plaintiff all claim thereto, and to pay the costs of such action, unless the defendant shall, by answer, disclaim all title to such land, and give a release thereof to the plaintiff, in which case he shall recover costs, unless the court shall otherwise order. It shall be sufficient to aver in the complaint in such action the nature and extent of the plaintiff's estate in such land, describing it as accurately

as may be, and that he is in possession thereof, and that the defendant makes some claim thereto, and to demand judgment that the plaintiff's claim be established against any claim of the defendant, and that he be forever barred against having or claiming any right or title to the land, adverse to the plaintiff; and the defendant, if he do not so disclaim and release, may answer any matter in denial of the plaintiff's claim, title, or possession, or which, if proved, will establish his own, and judgment shall be rendered according to the rights of the parties. And any person not having such title or possession, but being the owner and holder of any lien or incumbrance on land, shall also have the same right of action as the owner in fee in possession, to test the legality and validity of any other claim, lien or incumbrance on such land or any part thereof."

Complainant purchased the land of one Hiram Hayes and paid him therefor $6400, June 2, 1883, and took a warranty deed of conveyance and had paid the taxes since that time and expended on the land up to 1890, including the taxes of 1889, something over $12,500. Hayes derived title through two tax deeds issued to him, one dated September 5, 1870, for the taxes of 1866, recorded September 7, 1870, and the other issued January 1, 1882, for the taxes of 1877, and recorded January 3, 1882. The original owner of the land was one James D. Ray, who conveyed it to James Bardon by release or quitclaim on March 6, 1878, and James Bardon subsequently conveyed it to Thomas Bardon, the defendant, for a nominal consideration. James Bardon testifies that he paid Ray for his quitclaim deed $100, "and perhaps more;" and conveyed his interest to Thomas without money consideration. The case turned upon the validity of these tax deeds or either of them, and the Circuit Court held that the deed dated September 5, 1870, was valid; that the statute of limitations had run upon it; that the original owner was barred; and that complainant's title was good. A decree was accordingly entered for complainant, to review which this appeal is prosecuted. The opinion of the Circuit Court will be found, 45 Fed. Rep. 706.

*Mr. W. C. Silverthorn* and *Mr. T. C. Ryan*, (with whom was *Mr. M. A. Hurley* on the brief,) for appellant.

*Mr. A. L. Sanborn*, (with whom were *Mr. John C. Spooner* and *Mr. F. W. Downer* on the brief,) for appellee.

Mr. Chief Justice Fuller delivered the opinion of the court.

We remarked in *Gormley* v. *Clark*, 134 U. S. 338, 348, that while the rule was well settled that remedies in the courts of the United States at common law or in equity, according to the essential character of the case, are uncontrolled in that particular by the practice of the state courts, yet an enlargement of equitable rights by state statutes may be administered by the Circuit Courts of the United States, as well as by the courts of the State; and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction. *Broderick Will Case*, 21 Wall. 503, 520; *Holland* v. *Challen*, 110 U. S. 15, 25; *Frost* v. *Spitley*, 121 U. S. 552, 557.

Notwithstanding the statute may have enlarged the ordinary equitable action to quiet title and to remove a cloud, the Circuit Court had jurisdiction to award the relief prayed if the bill were properly brought under the section in question; and, as that section provided that any person having the possession and legal title might institute the suit, we perceive no reason why the complainant could not, if it were in possession, as is conceded, and had obtained the legal title through either of the tax deeds, a matter to be hereafter examined.

Section 35 of chapter 22 of the General Laws of Wisconsin of 1859, reënacted as section 1197 of the Revised Statutes of 1878, (Gen. Laws Wis. 1859, p. 21; Rev. Stat. Wis. 1878, c. 50, p. 383,) provided that the grantee in a tax deed might, at any time within three years after its date, commence an action against the owner or any person claiming under him for the purpose of barring such owner or his grantees from all right, title, interest, or claim in the land conveyed, and it

is argued that that remedy was exclusive, and not having been availed of by Hayes, that complainant cannot maintain this suit. But there is nothing in the statute to show that the remedy existing during three years after the date of the tax deed was intended to contract the jurisdiction and practice in equity, independently of statute, in respect of bills to quiet title, or to exclude the general remedy given by section 3186, (a remedy existing in Wisconsin since 1858, § 29, c. 141, Rev. Stat. 1858,) in favor of a person having the legal title and actual possession, though that legal title depended on a tax deed. *Stridde* v. *Saroni*, 21 Wisconsin, 173; *Grimmer* v. *Sumner*, 21 Wisconsin, 179; *Wals* v. *Grosvenor*, 31 Wisconsin, 681; *Grignon* v. *Black*, 76 Wisconsin, 674.

Nor can we regard the position of appellant that this suit was barred under section 22 of chapter 138 of the Revised Statutes of 1858 as tenable. That section provided that "an action for relief not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued," and the enumerated actions apparently did not include this suit. But this alleged limitation was not set up in the answer or the question raised in any way so far as appears, in the Circuit Court, and, if so, comes too late. And, apart from that, actual possession was not taken until October 13, 1889, and the bill was filed November 1, 1889.

We proceed then to the objections urged to the validity of the tax deed of September 5, 1870, and these must be disposed of, in accordance with the interpretation of the statutes of Wisconsin, by the highest judicial tribunal of that State. As was observed in *Lewis* v. *Munson*, 151 U. S. 545, 549: "No question is more clearly a matter of local law than one arising under the tax laws. Tax proceedings are carried on by the State for the purpose of collecting its revenue, and the various steps which shall be taken in such proceedings, the force and effect to be given to any act of the taxing officers, the results to follow the non-payment of taxes, and the form and efficacy of the tax deed, are all subjects which the State has power to prescribe, and peculiarly and vitally affecting its well-being. The determination of any questions affecting them is a matter

primarily belonging to the courts of the State, and the national tribunals universally follow their rulings except in cases where it is claimed that some right protected by the Federal constitution has been invaded."

Under the laws of Wisconsin the owner of land sold for taxes might, at any time within three years from date of the certificate of sale, redeem the same in the manner prescribed, and in like manner redeem at any time before the tax deed executed upon such sale was recorded. Gen. Laws Wis. 1859, c. 22, §§ 18, 19; Rev. Statutes of 1878, § 1165.

By section 25, c. 22, of the laws of 1859, carried forward into section 1176 of the Revised Statutes of 1878, it was provided that the tax deed, "duly witnessed and acknowledged, shall be *prima facie* evidence of the regularity of all the proceedings, from the valuation of the land by the assessor inclusive, up to the execution of the deed, and may be recorded with like effect as other conveyances of land."

Section 5 of chapter 138 of the laws of 1861 provided that no action should be commenced by the former owner to recover possession of land which had been sold and conveyed for non-payment of taxes or to avoid the deed, unless the action should be commenced within three years next after the recording of the deed. Rev. Stat. 1878, § 1188.

By section 32 of chapter 22 of the laws of 1859 it was enacted that no action should be maintained by the grantee in a tax deed or any one claiming under him, to recover the possession of the land described therein unless such action should be brought within three years next after the date of the recording of such deed, or unless such grantee or those claiming under him shall have paid the taxes assessed on such land for five years next after the date of such deed, or unless such grantee, or those claiming under him, had been in actual, continual possession of said land claiming title for three years previous to the expiration of five years next after the date of such deed. Rev. Stat. 1878, § 1187.

The rule may be accepted as thoroughly settled by the decisions of the Supreme Court of Wisconsin that when a tax deed is in due form and recorded in the proper office and the

lands described therein remain vacant and unoccupied for three years or more after the recording thereof, the tax title claimant is deemed to be in the constructive possession, the statute runs in his favor, and the original owner is barred from attacking its validity. *Geekie* v. *Kirby Carpenter Co.*, 106 U. S. 379; *Gunnison* v. *Hoehne*, 18 Wisconsin, 268; *Lawrence* v. *Kenney*, 32 Wisconsin, 281; *St. Croix Co.* v. *Ritchie*, 73 Wisconsin, 409; *Dupen* v. *Wetherby*, 79 Wisconsin, 203; *Lander* v. *Bromley*, 79 Wisconsin, 372; *Hotson* v. *Wetherby*, 60 N. W. Rep. 423; *Oconto Co.* v. *Jerrard*, 46 Wisconsin, 317, 327. In the last case Chief Justice Ryan said: "It has been uniformly held, in a multitude of cases, that, as against the grantee of a tax deed, the statute puts at rest all objections against the validity of the tax proceedings, whether resting on mere irregularity or going to the groundwork of the tax. The statute makes a deed valid on its face *prima facie* evidence, as soon as executed, of the regularity of all the proceedings, from the assessment of the lands, inclusive, to the execution of the deed. And the effect of all the decisions is, that when the statute has run in favor of the grantee, the deed becomes conclusive to the same extent. See *Edgerton* v. *Bird*, 6 Wisconsin, 527, and the cases collected in the note of Vilas & Bryant; *Lawrence* v. *Kenney*, 32 Wisconsin, 281; *Wood* v. *Meyer*, 36 Wisconsin, 308."

Here the land was vacant and unoccupied for more than three years from the time of the record of the tax deed, and if that deed was not void upon its face and was properly recorded it would follow that, under these decisions, Hayes obtained the legal title. With the record of the deed the time of redemption ended and the period of limitation began. Before the deed was recorded the owner might tender the redemption money and defeat the tax title, and at any time within three years after record he might bring suit to impeach the tax deed, or make defence to suit against him, by proof of defects in the proceedings upon which it was based. But after the expiration of three years, the statute purged the tax proceedings of all defects, and the deed could only be attacked on the ground of want of power to levy and sell by reason of

payment of taxes, lack of jurisdiction in the taxing officers,
or the like.

On behalf of the appellant a great variety of objections is
urged to the validity of the tax deeds and proceedings, many
of which are not open to consideration, if the deed was not
void on its face and was duly recorded. It is, indeed, con-
tended that appellee, by the introduction of certain evidence,
waived its right to reply on the statute of limitations and the
conclusive effect of the deed, but we do not think this con-
tention can be sustained. The evidence referred to was
adduced in rebuttal or in support of complainant's general
equities, and although formal defects in the proceedings may
have been disclosed, we cannot hold that the door for an
attack thereon was thereby intentionally opened, which the
statute had effectually closed. Still less, in a case where the
right, as well as the remedy, had been extinguished if com-
plainant's position were as claimed. *Leffingwell* v. *Warren*,
2 Black, 599. We regard the deed as valid on its face, and
cannot accept the suggestion that this is not so because too
literally following the statutory form. The recital as to
redemption was : " And whereas it further appears, as the
fact is, that the owner or owners or claimant or claimants of
said lands has or have not redeemed from said sale the lands
which were sold as aforesaid, and said lands are now unre-
deemed from such sale, . . ." The meaning is clear that
there had been no redemption by the owner or owners or
claimant or claimants.

But it is insisted that the tax proceedings in question were
void for want of jurisdiction in the taxing officers. These
proceedings were carried on by the officers of the town of
Superior, and appellant proved that in 1859 the town of
Pokegama was organized by the county board and included
township No. 49, range 14 W., in which the land in contro-
versy was situated, and that the town of Pokegama was duly
organized and represented upon the county board in 1859 and
1860. But it appeared that in 1859 two towns were set off
by the board of county supervisors, one, township 48, range 14,
to be known as Nemadji, and the other, township 49, range

14, to be known as Pokegama, and that on January 19, 1861, a resolution was passed by the county board as follows: "That the towns of Pokegama and Nemadji be vacated, the above order to take effect and be in force on and after the first day of April next, and the board do further order and determine that the next town meeting shall be held in the town of Superior to elect three supervisors that shall be the county and town board of supervisors."

While not accurately worded in that respect, the obvious intention was that the territory of these two towns should become part of the town of Superior, and the record of town and board meetings thereafter down to a point of time subsequent to these tax proceedings establish the continued exercise of jurisdiction over the whole territory.

By section 28 of chapter 13 of the Revised Statutes of 1858 power was conferred upon county boards " to set off, organize, vacate, and change the boundaries of towns in their respective counties." And to their action, as embodied in this resolution, it will not do, as is well said in *Hark* v. *Gladwell*, 49 Wisconsin, 172, 177, to apply " nice verbal criticism and strict parliamentary distinctions, because the business is transacted generally by plain men, not familiar with parliamentary law. Therefore their proceedings must be liberally construed in order to get at the real intent and meaning of the body."

By chapter 54 of the General Laws of Wisconsin of 1883 (vol. 1, p. 49,) it was provided, among other things, that " every town shall be considered and held to be, and to have been duly organized, which has exercised, or shall hereafter exercise, the powers, functions, and franchises of a town for a period of two years." The statute further enacted that the validity of any order or ordinance purporting to organize or set off any new town, or to change the boundaries of any existing town or towns, might be tested by *certiorari* or any other proper proceeding brought directly for the purpose of vacating such order or ordinance in a court of competent jurisdiction, at any time within two years after the date of such order or ordinance, or within sixty days after the publication of the act if two years had already expired, and that no such order or ordi-

nance should be otherwise questioned than directly. This recognized the general rule of the common law on the subject of collateral attack, and we are of opinion that the corporate standing of the town of Superior as including the other two towns cannot be thus questioned after the years of corporate action shown by the evidence. *Austrian* v. *Guy*, 21 Fed. Rep. 500.

Dismissing the numerous other objections discussed, such as the admission of the deeds in evidence without proof of execution; the alleged payment of the taxes for 1866; the custody of the tax records; the official character of the deputy county clerk; the validity of his appointment, etc., as either not properly raised or arising, on the record, or as not sufficiently well founded to call for observations upon them, although they have all been carefully examined, we are brought to the point which the Circuit Court regarded as the principal question in the case, namely, the objection made to the elder tax deed that the record thereof was void, because not properly indexed as the statute required.

By sections 140, 142, and 143 of chapter 13 of the Revised Statutes of 1858 it was provided that the register of deeds should have the custody of all books, records, deeds, etc., deposited or kept in his office; should record or cause to be recorded correctly and in a plain and distinct handwriting in suitable books, all deeds, mortgages, maps, instruments, and writings authorized by law to be recorded in his office; that he should keep a general index, each page of which should be divided into eight columns, with heads to the respective columns, as follows: " Time of reception. Name of grantor. Name of grantee. Description of land. Name of instrument. Volume and page where recorded. To whom delivered. Fees received;" that such register should make correct entries in said index of every instrument or writing received by him for record, under the respective and appropriate heads, entering the names of the grantors in alphabetical order; and should immediately, upon the receipt of any such instrument or writing for record, enter in the appropriate column and in the order in which it was received the day, hour, and minute of its recep-

tion, and the same should be considered as recorded at the time so noted. By section 759 of the Revised Statutes of 1878 it is directed that the division shall be into nine columns, the first column being headed: " Number of instrument," and the others as in the act of 1858.

In *Lombard* v. *Culbertson*, 59 Wisconsin, 433, 439, it was said that the entries in the general index are the material things in determining whether a deed has been so recorded as to be notice to subsequent purchasers, prior decisions to the same effect being cited, and as to a claimant under a tax deed it was held that " he is clearly required to show. that it was so recorded as to be constructive notice, at least, to the. plaintiff, that he held such tax title and intended to rely upon such deed to defeat plaintiff's title. He must record it the same way to set the statute of limitations running in his favor and against the plaintiff as he would be required to do in the case of a deed or mortgage to defeat the right of a subsequent purchaser for value without notice." The decisions are numerous, and many are cited by counsel upon the question whether in recording tax deeds the general index and the record at large can be relied on to help out defects existing in either.

In this case the tax deed was entered in the index under the name of Douglas County by which it was issued, although running in the name of the State as well as of the county. And it is contended that, as a tax deed containing the name of the county as grantor, but omitting the name of the State as grantor, is void upon its face, *Easley* v. *Whipple*, 57 Wisconsin, 485 ; *Haseltine* v. *Hewitt*, 61 Wisconsin, 121, and that if the index showed a deed void on its face, though it was not so in fact, the falsity of the index would not be cured by the actual and correct spreading of the deed upon the record, therefore this deed should be held void. But it was distinctly ruled in *Hall* v. *Baker*, 74 Wisconsin, 118, 131, that all that is required by the provision regarding the general index is to give the name of the. county only, and not the State, as grantor, and Chief Justice Cole said: " A person searching the record for a tax deed would naturally look for the name

of the county which gave it, and would not be likely to look for the name of the State as grantor. It would be laborious to find the proper deed under the name of the State, considering the many counties in the State."

It appeared that none of the tax deeds of record in the register's office of Douglas County, Wisconsin, had been indexed under the name of the State of Wisconsin, either under the letter S or under the letter W, in the index, and that the respective registers of deeds had been and were accustomed to enter such deeds under the letter D with the name of Douglas County as grantor.

We entirely concur in the ruling of the Supreme Court of Wisconsin, and it is decisive of the question made.

We do not understand from the arguments of counsel that it was contended in the court below, or is contended here, that the date of filing, "1870, September 7, 3 P.M.," the name of the grantor, "Douglas County, per clerk," and of the grantee, "Hayes, Hiram," did not appear upon the original index, although in his brief in reply counsel for appellant criticises the language of the District Judge in disposing of the case as if he had therein proceeded upon the ground that a part of the index was the whole of it. We assume that the original index had the eight divisions of the statute, but that the fourth column, under the heading "description," was subdivided, and that all after the first three statutory divisions ran as exhibited in the photographic copy introduced below and presented at the bar, and reproduced on page 339.

The objection appears to be that in the column for the description the figures 28, 49, 14 were not under the sub-headings of the fourth division, but so crowded toward the right as to be so incorrect and misleading as to invalidate the index in respect of that entry. We do not think so. We agree with the Circuit Court that taking the page as a whole any one who would be misled by it would be misled wilfully, and that the index furnished all the information that an ordinarily prudent man would want to send him to the full record of the deed. The entry would be read at once as the southwest quarter or half of section 28, township 49, north of range 14

west, recorded in volume one of tax deeds on pages 378 and 379, and delivered to H. Hayes, who paid the charge of $1. The designation of the range should have been west instead of east, but the owner or any person desirous of obtaining information about the land would know that range 14 west was in Douglas County and that range 14 east was not. At all events, he could refer at once, if he had any doubt, to volume one of tax deeds, pages 378 and 379.

It was said in *Oconto Company* v. *Jerrard*, 46 Wisconsin, 317, 322 : " The statutory direction is substantially complied with by a certain reference to another book in the same office. No sane man searching the general index for instruments affecting any land would disregard such a reference, and it would be a severe technicality to avoid the registration of a deed for such a failure in the duty of the register, with such present and easy means given on the face of the index of obtaining the information which the index itself should have given. The cruelty of such a technicality would be apparent in any instrument except a tax deed. And, as already seen, what can impair registry of a tax deed impairs the registry of any deed."

Even if a more rigid rule were applied, we should say that, in any view, the index was sufficient to set the statute of limitations in operation.

But it further appeared that under chapter 201 of the laws of 1860, (Laws 1860, 178,) providing that when public records should become dilapidated it should be the duty of the board of supervisors to cause the same to be transcribed and certified, the original index in the register's office was transcribed under certain resolutions of the board of supervisors of Douglas County of May 28, 1872, and July 2, 1873, and that the record was completed November 9, 1875. It is admitted that the index as thus reproduced is not open to the objections raised.

In *Hotson* v. *Wetherby*, 60 N. W. Rep. 423, it was held that " it is well settled that an omission to make proper entries in the general index at the time the deed is spread upon the record may be removed after such recording by making the proper entries, and when so made the entry will be good from

that date, and it will not be necessary to record the deed again at length." And in that case, and in *Lombard* v. *Culbertson*, 59 Wisconsin, 433, the doctrine is laid down that the register of deeds may correct a record of his own motion.

The law of 1860 directed the officer making the transcript to "certify that he has carefully compared the matters therein contained and written, and that the same is a correct and literal copy of the book from which the same was transcribed, naming such book," and enacted that "such copy record, so certified, is hereby declared a public record, and as such shall, in all respects, have the same effect as the book from which the same was transcribed." The resolution of May 28, 1872, provided that after the indices should be transcribed, "the old volumes shall be carefully preserved as the records of the county, and the new copy shall be for general use until the legislature shall authorize the use of the copies as records." The resolution of July 2, 1873, requested the register to complete the general index as authorized May 28, 1872, and to examine and correct the index and copy in time for legislation by the next legislature.

By chapter 284 of the laws of 1875, approved March 5, 1875, (Laws 1875, 541,) authorizing the county board of supervisors to replace worn or dilapidated records, it was provided that the officer "shall carefully compare the copy so made with the original, and shall certify thereon that he has carefully compared said copy with such original, and that said copy is a correct transcript from such original and of the whole thereof, and that the same has been so transcribed by him pursuant to the resolution of the board of supervisors of the said county, specifying in the certificate the date of the passage of such resolution;" and that "the copy so made shall have the same effect as the original, and be evidence in all cases where such original would be evidence, and shall be in its legal effect in all respects considered as an original record in such office."

The certificate to the copy in this instance, under date November 9, 1875, was by the register, who certified to this effect: "I have carefully compared this copy of 'grantor's index' with the original in this office, and that said copy is a

correct transcript from such original and of the whole thereof, being up to and including the 31st day of December, A.D. 1871, and that the same has been transcribed by me pursuant to the resolution of the board of supervisors of said county passed May 28th, 1872."

After the index was thus reproduced the original was kept in the vault and the certified copy was in common use from November 9, 1875. It would seem that the new volume was from that date as effective as an original, and that the register of deeds would have the same power to correct mistakes in the latter as in the former. At all events, under the circumstances, appellant occupied no position to question the title of complainant as a *bona fide* purchaser in 1883, on the ground of informality in the original index.

*Decree affirmed.*